IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LISA MARIE AREND, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) 2:12cv1661 |
| | ) **Electronic Filing** |
| CAROLYN W. COLVIN, ACTING | ) |
| COMMISSIONER OF SOCIAL | ) |
| SECURITY, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION**

March 17, 2014

**I.  INTRODUCTION**

Plaintiff Lisa Marie Arend ("Arend") brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") benefits under Titles II and XVI of the Social Security Act ("Act") [42 U.S.C. §§ 401-433, 1381-1383f].  The parties have filed cross-motions for summary judgment pursuant to Federal Rule of Civil Procedure 56,[1] and the record has been developed at the administrative level.  For the reasons that follow, Arend's motion for summary judgment (*ECF No. 9*) will be denied, the Commissioner's motion for summary judgment (*ECF*

---

[1] The Court acknowledges that judicial review under the Act is not governed by the standards generally applicable under Rule 56.  *Banks v. Shalala*, 43 F.3d 11, 13-14 (1st Cir. 1994); *Flores v. Heckler*, 755 F.2d 401, 403 (5th Cir. 1985).  In this context, the procedure typically employed at the summary-judgment stage of litigation "merely serves as a convenient method under which both parties may present appropriate briefs in support and in opposition to the[ir] respective positions." *Sumler v. Bowen*, 656 F.Supp. 1322, 1330 (W.D.Ark. 1987).

1

*No. 11*) will be granted, and the Commissioner's decision denying Arend's applications for benefits will be affirmed.

## II. PROCEDURAL HISTORY

Arend protectively applied for DIB and SSI benefits on May 1, 2009, alleging that she had become "disabled" on July 1, 2007. R. at 107, 111, 135. Pennsylvania's Bureau of Disability Determination ("Bureau") denied the applications on September 25, 2009. R. at 71, 75. Arend responded on November 27, 2009, by filing a request for an administrative hearing. R. at 80-82. On February 24, 2011, a hearing was held in Seven Fields, Pennsylvania, before Administrative Law Judge ("ALJ") Brian W. Wood. R. at 30. Arend, who was represented by counsel, appeared and testified at the hearing. R. at 33-53. Dr. Fred A. Monaco, an impartial vocational expert, provided testimony about the expectations of employers existing in the national economy. R. at 54-58. In a decision dated June 8, 2011, the ALJ determined that Arend was not "disabled" within the meaning of the Act. R. at 7-26.

On August 8, 2011, Arend sought administrative review of the ALJ's decision by filing a request for review with the Appeals Council. R. at 5-6. The Appeals Council denied the request for review on October 4, 2012, thereby making the ALJ's decision the "final decision" of the Commissioner in this case. R. at 1. Arend commenced this action on November 12, 2012, seeking judicial review of the Commissioner's decision. ECF Nos. 1-3. Arend and the Commissioner filed motions for summary judgment on March 1, 2013, and April 4, 2013, respectively. ECF Nos. 9 & 11. Those motions are the subject of this memorandum opinion.

## III. STANDARD OF REVIEW

This Court's review is plenary with respect to all questions of law. *Schaudeck v. Commissioner of Social Security Administration*, 181 F.3d 429, 431 (3d Cir. 1999). With respect

to factual issues, judicial review is limited to determining whether the Commissioner's decision is "supported by substantial evidence." 42 U.S.C. § 405(g); *Adorno v. Shalala*, 40 F.3d 43, 46 (3d Cir. 1994). The Court may not undertake a *de novo* review of the Commissioner's decision or re-weigh the evidence of record. *Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190-1191 (3d Cir. 1986). Congress has clearly expressed its intention that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988)(internal quotation marks omitted). As long as the Commissioner's decision is supported by substantial evidence, it cannot be set aside even if this Court "would have decided the factual inquiry differently." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). "Overall, the substantial evidence standard is a deferential standard of review." *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004).

In order to establish a disability under the Act, a claimant must demonstrate a "medically determinable basis for an impairment that prevents him [or her] from engaging in any 'substantial gainful activity' for a statutory twelve-month period." *Stunkard v. Secretary of Health & Human Services*, 841 F.2d 57, 59 (3d Cir. 1988); *Kangas v. Bowen*, 823 F.2d 775, 777 (3d Cir. 1987); 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is considered to be unable to engage in substantial gainful activity "only if his [or her] physical or mental impairment or impairments are of such severity that he [or she] is not only unable to do his [or her] previous work but cannot, considering his [or her] age, education, and work experience,

3

engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To support his or her ultimate findings, an administrative law judge must do more than simply state factual conclusions. He or she must make specific findings of fact. *Stewart v. Secretary of Health, Education & Welfare*, 714 F.2d 287, 290 (3d Cir. 1983). The administrative law judge must consider all medical evidence contained in the record and provide adequate explanations for disregarding or rejecting evidence. *Weir on Behalf of Weir v. Heckler*, 734 F.2d 955, 961 (3d Cir. 1984); *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981).

The Social Security Administration ("SSA"), acting pursuant to its legislatively-delegated rulemaking authority, has promulgated a five-step sequential evaluation process for the purpose of determining whether a claimant is "disabled" within the meaning of the Act. The United States Supreme Court recently summarized this process by stating as follows:

> If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further. At the first step, the agency will find non-disability unless the claimant shows that he is not working at a "substantial gainful activity." [20 C.F.R.] §§ 404.1520(b), 416.920(b). At step two, the SSA will find non-disability unless the claimant shows that he has a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." §§ 404.1520(c), 416.920(c). At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled; if so, the claimant qualifies. §§ 404.1520(d), 416.920(d). If the claimant's impairment is not on the list, the inquiry proceeds to step four, at which the SSA assesses whether the claimant can do his previous work; unless he shows that he cannot, he is determined not to be disabled. If the claimant survives the fourth stage, the fifth, and final, step requires the SSA to consider so-called "vocational factors" (the claimant's age, education, and past work experience), and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. §§ 404.1520(f), 404.1560(c), 416.920(f), 416.960(c).

*Barnhart v. Thomas*, 540 U.S. 20, 24-25, 124 S.Ct. 376, 157 L.Ed.2d 333 (2003)(footnotes omitted). Factual findings pertaining to all steps of the sequential evaluation process are subject to judicial review under the "substantial evidence" standard. *McCrea v. Commissioner of Social Security*, 370 F.3d 357, 360-361 (3d Cir. 2004).

Section 105 of the Contract With America Advancement Act of 1996 ("CWAAA") amended the Social Security Act to provide that "an individual shall not be considered to be disabled" thereunder if "alcoholism or drug addiction" would be "a contributing factor material to the Commissioner's determination that the individual is disabled." Pub. L. No. 104-121, § 105; 110 Stat. 847, 852-853 (1996); 42 U.S.C. §§ 423(d)(2)(C), 1382c(a)(3)(J). The Commissioner has promulgated regulations to implement the statutory mandate of the CWAAA. 20 C.F.R. §§ 404.1535, 416.935. Under the applicable regulations, the critical question is whether a claimant who is disabled as a result of drug or alcohol use would remain disabled if he or she were to stop using those substances. 20 C.F.R. §§ 404.1535(b)(1), 416.935(b)(1). If his or her disability would persist even after a cessation of drug or alcohol abuse, he or she is entitled to an award of benefits. 20 C.F.R. §§ 404.1535(b)(2)(ii), 416.935(b)(2)(ii). Conversely, if a claimant's disability would not remain in the absence of continuing drug or alcohol abuse, a finding of "materiality" is warranted, thereby requiring a denial of benefits. 20 C.F.R. §§ 404.1535(b)(2)(i), 416.935(b)(2)(i).

In an action in which review of an administrative determination is sought, the agency's decision cannot be affirmed on a ground other than that actually relied upon by the agency in making its decision. In *Securities & Exchange Commission v. Chenery Corp.*, 332 U.S. 194, 67 S.Ct. 1575, 91 L.Ed. 1995 (1947), the Supreme Court explained:

> When the case was first here, we emphasized a simple but fundamental rule of administrative law. That rule is to the effect that a reviewing court, in dealing

> with a determination or judgment which an administrative agency alone is
> authorized to make, must judge the propriety of such action solely by the grounds
> invoked by the agency. If those grounds are inadequate or improper, the court is
> powerless to affirm the administrative action by substituting what it considers to
> be a more adequate or proper basis. To do so would propel the court into the
> domain which Congress has set aside exclusively for the administrative agency.

*Chenery Corp.*, 332 U.S. at 196. The United States Court of Appeals for the Third Circuit has recognized the applicability of this rule in the Social Security disability context. *Fargnoli v. Massanari*, 247 F.3d 34, 44, n. 7 (3d Cir. 2001). Thus, the Court's review is limited to the four corners of the ALJ's decision. *Cefalu v. Barnhart*, 387 F.Supp.2d 486, 491 (W.D.Pa. 2005).

**IV.   THE ALJ'S DECISION**

In his decision, the ALJ determined that Arend had not engaged in substantial gainful activity subsequent to her alleged onset date. R. at 13. Arend was found to be suffering from headaches, fibromyalgia, chronic mechanical back pain, chronic obstructive pulmonary disease ("COPD"), hepatitis C, a depressive disorder, an anxiety disorder, post-traumatic stress disorder, obsessive-compulsive disorder, a personality disorder, polysubstance dependence, and an injury to her right ankle. R. at 13. The injury to Arend's right ankle was deemed to be "non-severe." R. at 13. Her remaining impairments were deemed to be "severe" under the Commissioner's regulations. R. at 13; 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1520(c), 416.920(a)(4)(ii), 416.920(c). The ALJ concluded that these impairments did not meet or medically equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. at 13-16.

In accordance with 20 C.F.R. §§ 404.1545 and 416.945, the ALJ assessed Arend's "residual functional capacity"[2] as follows:

---

[2] The term "residual functional capacity" is defined as "that which an individual is still able to do despite the limitations caused by his or her impairments." *Hartranft v. Apfel*, 181 F.3d 358, 359, n. 1 (3d Cir. 1999)(parentheses omitted), citing 20 C.F.R. § 404.1545(a). The same residual

6

> After careful consideration of the entire record, the undersigned finds that, based on all of the impairments, including the substance use disorders, the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she can stand or walk for four (4) hours of an eight (8) hour workday, sit for six (6) hours of an eight (8) hour workday, and requires a sit or stand option every thirty (30) minutes. The claimant can never climb ladders, ropes and scaffold [sic]; and she can occasionally climb ramps and stairs, balance, stoop, kneel, crouch and crawl. The claimant is able to perform simple, routine, repetitive tasks; she requires low stress work, which is defined as work involving only occasional decision-making and occasional changes in the work setting. The claimant cannot perform in a fast-paced production environment; she can have occasional interaction with coworkers and supervisors, and no interaction with the public. In addition, she would be off task twenty (20) percent of the workday due to her impairments.

R. at 16. Arend had "past relevant"[3] work experience as a phlebotomist and personal care attendant. R. at 140, 146. Dr. Monaco classified the phlebotomist position as a "semi-skilled"[4] job at the "light"[5] level of exertion. R. at 55. He described the personal care attendant position

---

functional capacity assessment is used at the fourth and fifth steps of the sequential evaluation process. 20 C.F.R. §§ 404.1545(a)(5)(i)-(ii), 416.945(a)(5)(i)-(ii).

[3] "Past relevant work" is defined as "substantial gainful activity" performed by a claimant within the last fifteen years that lasted long enough for him or her to learn how to do it. 20 C.F.R. §§ 404.1560(b)(1), 416.960(b)(1). The Commissioner has promulgated comprehensive regulations governing the determination as to whether a claimant's work activity constitutes "substantial gainful activity." 20 C.F.R. §§ 404.1571-404.1576, 416.971-416.976.

[4] "Semi-skilled work is work which needs some skills but does not require doing the more complex work duties. Semi-skilled jobs may require alertness and close attention to watching machine processes; or inspecting, testing or otherwise looking for irregularities; or tending or guarding equipment, property, materials, or persons against loss, damage or injury; or other types of activities which are similarly less complex than skilled work, but more complex than unskilled work. A job may be classified as semi-skilled where coordination and dexterity are necessary, as when hands or feet must be moved quickly to do repetitive tasks." 20 C.F.R. §§ 404.1568(b), 416.968(b).

[5] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [a claimant] must have the ability to do substantially all of these activities." 20 C.F.R. §§ 404.1567(b), 416.967(b).

as an "unskilled"[6] job at the "very heavy"[7] level of exertion. R. at 55-56. Since Arend was found to be capable of performing only a reduced range of "unskilled" jobs at the "light" level of exertion, it was determined that she could not return to her past relevant work. R. at 19.

Arend was born on July 30, 1966, making her forty years old on her alleged onset date and forty-four years old on the date of the ALJ's decision. R. at 33. She was classified as a "younger person" under the Commissioner's regulations. 20 C.F.R. §§ 404.1563(c), 416.963(c). She had the equivalent of a high school education and an ability to communicate in English. R. at 34-35, 138, 144; 20 C.F.R. §§ 404.1564(b)(4)-(5), 416.964(b)(4)-(5). Given the applicable residual functional capacity and vocational assessments, the ALJ determined that Arend was unable to maintain a full-time job whenever she was actively abusing drugs or alcohol. R. at 19. The ALJ concluded that Arend could work as a bench assembler, machine feeder or document preparer when she was not actively abusing such substances. R. at 25. Dr. Monaco's testimony established that those jobs existed in the national economy for purposes of 42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B).[8] R. at 56-57. Arend's substance abuse was deemed to be "a

---

[6] "Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time. The job may or may not require considerable strength. For example, [the Commissioner] consider[s] jobs unskilled if the primary work duties are handling, feeding and offbearing (that is, placing or removing materials from machines which are automatic or operated by others), or machine tending, and a person can usually learn to do the job in 30 days, and little specific vocational preparation and judgment are needed. A person does not gain work skills by doing unskilled jobs." 20 C.F.R. §§ 404.1568(a), 416.968(a).

[7] "Very heavy work involves lifting objects weighing more than 100 pounds at a time with frequent lifting or carrying of objects weighing 50 pounds or more." 20 C.F.R. §§ 404.1567(e), 416.967(e).

[8] At the fifth step of the sequential evaluation process, "the Commissioner bears the burden of proving that, considering the claimant's residual functional capacity, age, education, and past work experience, [he or] she can perform work that exists in significant numbers in the regional or national economy." *Boone v. Barnhart*, 353 F.3d 203, 205 (3d Cir. 2003). This burden is commonly satisfied by means of vocational expert testimony. *Rutherford v. Barnhart*, 399 F.3d 546, 551 (3d Cir. 2005).

contributing factor material to" the finding of "disability," thereby resulting in a denial of benefits under the CWAAA. R. at 26. This determination was predicated on a finding that Arend's impairments would not cause her to be "off task" for twenty percent of a typical workday when she was not engaging in substance abuse. R. at 16, 21.

## V. THE EVIDENTIARY RECORD

Although Arend quit school before completing the twelfth grade, she later obtained her General Educational Development ("GED") certification. R. at 35. She went on to receive training in the area of phlebotomy. R. at 34. Arend started to work as a phlebotomist in 1989. R. at 140. She eventually got married and had three children. R. at 373. After nine years of marriage, Arend left her husband in order to free herself from an "abusive relationship." R. at 373. She started to work at a personal care home in 2003. R. at 140.

On January 1, 2005, Arend consumed sixty pills of Xanax in an attempt to take her own life. R. at 182, 372. As a result of her suicide attempt, Arend was involuntarily committed to the Western Psychiatric Institute and Clinic ("WPIC") pursuant to 50 PA. STAT. § 7302. R. at 182, 372. She was discharged from inpatient treatment two weeks later.[9] R. at 182, 372.

The Alle-Kiski Area HOPE Center, Inc. ("HOPE Center"), "provides emergency shelter for victims of domestic violence who would otherwise be unsafe or homeless." R. at 446. Arend first sought shelter at the HOPE Center on December 12, 2005. R. at 446. She periodically returned to the HOPE Center on other occasions. R. at 446. In January 2007, Arend started to work as a home health care attendant. R. at 140. She stopped working on her alleged onset date

---

[9] An involuntary hospitalization authorized pursuant to 50 PA. STAT. § 7302 cannot last for more than 120 hours. 50 PA. STAT. § 7302(d). It is not clear whether Arend voluntarily agreed to remain in treatment for a longer period of time pursuant to 50 PA. STAT. § 7201, or whether the duration of her involuntary commitment was judicially extended in accordance with 50 PA. STAT. § 7303.

9

of July 1, 2007. R. at 139. At the hearing, Arend testified that she had been discharged for failing to show up for work. R. at 35. She attributed her frequent absences to domestic violence and depression. R. at 36.

Arend stayed at the Blackburn Center Against Domestic and Sexual Violence ("Blackburn Center"), a shelter for battered women, from January 30, 2008, through February 21, 2009. R. at 447. On May 14, 2009, she began an outpatient treatment program for drug and alcohol abuse offered by Family Services of Western Pennsylvania ("Family Services"). R. at 381. After her initial assessment, Arend continued to attend therapy sessions on a weekly basis. R. at 53. She returned to the Blackburn Center on June 11, 2009, and remained there until July 17, 2009. R. at 447.

On August 25, 2009, Dr. Victor Jabbour performed a consultative physical examination of Arend in connection with her applications for DIB and SSI benefits. R. at 298-310. After completing the examination, Dr. Jabbour reported that Arend could frequently lift or carry objects weighing up to three pounds and occasionally lift or carry objects weighing up to ten pounds. R. at 304. He opined that she could stand or walk for no more than one hour, and sit for "less than" six hours, during the course of an eight-hour workday. R. at 304. Arend's pushing and pulling abilities were deemed to be unlimited. R. at 304. Dr. Jabbour also indicated that Arend could engage in only occasional postural maneuvers, and that she needed to limit her exposure to heights, vibration, temperature extremes and humidity. R. at 305. Despite the severe sitting, walking and standing limitations identified by Dr. Jabbour, his examination detected "[n]o limitations in [Arend's] lumbosacral spine movement."[10] R. at 302.

---

[10] Mary Diane Zelenak ("Zelenak"), an adjudicator working for the Bureau, ultimately concluded that Arend was physically capable of performing an unrestricted range of "medium" work. R. at 61-67. Under the Commissioner's regulations, Zelenak's administrative findings did not

Dr. Lanny Detore performed a consultative psychological evaluation of Arend on August 27, 2009. R. at 311-319. Based on the findings of his evaluation, Dr. Detore asserted that Arend had "moderate" to "marked" limitations in her abilities to carry out instructions, make judgments concerning simple work-related decisions, respond appropriately to work pressures in a usual work setting, respond appropriately to changes in a routine work setting, and interact appropriately with supervisors, co-workers, and members of the general public. R. at 316. Arend's abilities to understand and remember short, simple instructions were deemed to be only "slightly" limited. R. at 316. "Slight" to "moderate" limitations were found in her abilities to understand and remember detailed instructions. R. at 316.

Dr. Sharon Becker Tarter, a non-examining psychological consultant, opined on September 24, 2009, that Arend was "able to meet the basic mental demands of competitive work on a sustained basis despite the limitations resulting from her impairments." R. at 322. In the narrative portion of her consultative report, Dr. Tarter stated as follows:

> The claimant's basic memory processes are intact. She could be expected to complete a normal workweek without exacerbation of psychological symptoms. She is capable of asking simple questions and accepting instruction. She can sustain an ordinary routine and adapt to routine changes without special supervision. Moreover, she retains the ability to perform repetitive work activities without constant supervision. There are no restrictions in her abilities in regards to understanding and memory.

R. at 322. Dr. Tarter found Arend's subjective complaints to be only "partially credible." R. at 322.

Dr. Margaret Prather, a psychiatrist, examined Arend on January 26, 2010. R. at 372-374. During the examination, Arend appeared to be "anxious," "tremulous" and "quite

---

constitute "evidence" of Arend's ability to work. 20 C.F.R. §§ 404.1527(e)(1)(i), 416.927(e)(1)(i). The ALJ correctly took notice of Zelenak's findings without considering them as "opinion evidence." R. at 24.

11

uncomfortable." R. at 374. Dr. Prather assigned Arend a Global Assessment of Functioning ("GAF") score of fifty-five.[11] R. at 374. Arend was given prescriptions for Effexor XR, Trazodone and Neurontin. R. at 374.

On August 10, 2010, a magnetic resonance imaging ("MRI") scan of Arend's lumbar spine yielded normal results. R. at 442. Arend apparently injured her right ankle on September 3, 2010. R. at 444. An x-ray of the ankle confirmed that Arend had not suffered a fracture or dislocation.[12] R. at 444.

Arend experienced headaches during the fall of 2010. R. at 340. Dr. Seth H. Lichtenstein performed a neurological examination of Arend on October 12, 2010. R. at 340-343. It was recommended that an MRI scan be performed on Arend's brain. R. at 341. The MRI scan was performed one month later. R. at 342-343. No significant abnormalities were found. R. at 342. A pulmonary function test conducted on January 28, 2011, revealed that Arend was suffering from a "moderate obstructive lung defect." R. at 430-432, 439-440.

At the hearing, Arend complained of severe pain in her neck and back. R. at 37. She stated that the pain typically manifested itself anywhere from three to four times per week. R. at 37. Arend testified that she frequently found herself unable to concentrate and "afraid to leave

---

[11] "The Global Assessment of Functioning ('GAF') scale, designed by the American Psychiatric Association, ranges from zero to one hundred and assesses a person's [level of] psychological, social and occupational function[ing]." *Taliaferro v. Astrue*, 788 F.Supp.2d 412, 414, n. 2 (W.D.Pa. 2011). A GAF rating falling between fifty-one and sixty *may* be indicative of an individual who exhibits "moderate difficulty in social, occupational, or school functioning." American Psychiatric Association: *Diagnostic and Statistical Manual of Mental Disorders*, ("DSM-IV-TR")(4th ed. 2000), at 34. An individual with a GAF score in this range *may* experience "conflicts with peers or co-workers." *Id.*

[12] An impairment must satisfy the Act's twelve-month durational requirement in order to be "severe" under the Commissioner's regulations. 20 C.F.R. §§ 404.1522, 416.922. The ALJ found Arend's right ankle injury to be "non-severe" because it had not resulted in a functional restriction lasting for the requisite twelve-month period. R. at 13.

the house." R. at 37. She insisted that it was often difficult for her to "fold a load of clothes." R. at 37.

Two case workers accompanied Arend to the hearing. R. at 48-49. Arend described one of the case workers as her "supportive living person." R. at 49. When questioned by her counsel, Arend explained that she received weekly visits from a third case worker, who was not present at the hearing. R. at 50. The testimonial record suggests that the case workers were responsible for ensuring that Arend properly adhered to her medication regimen. R. at 49.

## VI. DISCUSSION

The critical inquiry in any case involving a claimant engaged in substance abuse is whether the functional limitations which render him or her "disabled" would still exist in the absence of continued drug or alcohol consumption. *Salazar v. Barnhart*, 468 F.3d 615, 623-624 (10th Cir. 2006). The claimant is the party responsible for submitting evidence about his or her own medical condition. *Bowen v. Yuckert*, 482 U.S. 137, 146, n. 5, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987). "The question of whether 'alcoholism or drug addiction' is 'a contributing factor material to' a claimant's disability generally turns on medical information unique to the claimant rather than on general conditions in the national economy." *Lukaszewicz v. Astrue*, Civil Action No. 10-1185, 2011 WL 2441732, at *8, 2011 U.S. Dist. LEXIS 72942, at *20 (W.D.Pa. May 27, 2011). For this reason, the claimant bears the burden of production with respect to the issue of materiality. *Cage v. Commissioner of Social Security*, 692 F.3d 118, 122-125 (2d Cir. 2012); *Parra v. Astrue*, 481 F.3d 742, 748 (9th Cir. 2007); *Doughty v. Apfel*, 245 F.3d 1274, 1278-1280 (11th Cir. 2001); *Pettit v. Apfel*, 218 F.3d 901, 903 (8th Cir. 2000); *Brown v. Apfel*, 192 F.3d 492, 498 (5th Cir. 1999). A finding of materiality "must be supported by at least some medical evidence." *Sklenar v. Barnhart*, 195 F.Supp.2d 696, 700 (W.D.Pa. 2002). That evidence,

13

however, need not come in the form of "expert psychiatric opinion evidence." *McGill v. Commissioner of Social Security*, 288 Fed.Appx. 50, 53 (3d Cir. 2008)(unpublished). "Where the effects of a claimant's underlying mental impairments cannot be separated from the effects of his or her substance abuse, a finding of materiality is not warranted." *Ambrosini v. Astrue*, 727 F.Supp.2d 414, 431 (W.D.Pa. 2010).

The materiality determination in this case concerns only the ALJ's finding that Arend's impairments would cause her to be "off task" for twenty percent of a standard workday.[13] R. at 16. The ALJ concluded that Arend's remaining limitations would still be present in the absence of continued substance abuse. R. at 21. Dr. Monaco testified that an individual with those limitations would be able to maintain a full-time job as a bench assembler, machine feeder or document preparer. R. at 56-57. When the ALJ added the accommodation permitting the described individual to remain "off task" for twenty percent of a typical workday, Dr. Monaco testified that such an individual could not remain in a full-time position existing in significant numbers in the national economy. R. at 57. The dispositive question in this case is whether substantial evidence supports the ALJ's conclusion that, in the absence of continued drug or alcohol consumption, Arend would be able to stay "on task" while working as a bench assembler, machine feeder or document preparer.

On May 5, 2009, Arend appeared at Family Services with "disability papers," complaining of anxiety and depression related to her "attempts to leave an abusive relationship." R. at 284. At that time, Arend was drinking three to four servings of alcohol roughly three to four times per week. R. at 284. Dr. Patricia Wilkosz, a treating psychiatrist, advised Arend that her "[m]ood symptoms" would not improve as long as she was consuming alcoholic beverages.

---

[13] In her brief, Arend makes no mention of this finding, which is the *only* finding pertinent to the issue of materiality. ECF No. 10.

R. at 284. On that occasion, Dr. Wilkosz gave Arend a GAF rating of forty-five.[14] R. at 285. During a subsequent treatment session conducted on June 2, 2009, Arend reported that she was still drinking alcohol on a regular basis. R. at 291. Dr. Wilkosz reiterated her earlier admonition that Arend needed to stop drinking alcohol in order to improve her mental condition. R. at 291.

Dr. Jabbour examined Arend on August 25, 2009. R. at 298-310. In his examination report, Dr. Jabbour stated that Arend had stopped drinking alcohol one month earlier.[15] R. at 299. Two days later, Dr. Detore performed a consultative psychological evaluation of Arend. R. at 311-319. In the written report detailing the findings of the evaluation, Dr. Detore made the following observations:

> The claimant indicates that she began using alcohol as a teenager sporadically, but reports that when she became involved in a relationship with her boyfriend about 10 years ago, she became chronically addicted to alcohol ranging from a few drinks a day to heavy usage as well as powdered coke. She reports that the powdered coke was about daily for 10 years. She indicates that she did last use about a month ago when she saw her boyfriend. She is such a codependent individual that she realizes that she has to stay completely away from any people and/or areas regarding the usage of drugs or alcohol.

R. at 312. The ALJ relied on this portion of Dr. Detore's report in concluding that Arend was susceptible to relapses whenever she was around other individuals known to abuse drugs or alcohol. R. at 18-19.

---

[14] A GAF score falling between forty-one and fifty is *sometimes* indicative of an individual exhibiting "serious impairment in social, occupational, or school functioning." American Psychiatric Association: *Diagnostic and Statistical Manual of Mental Disorders*, ("DSM-IV-TR")(4th ed. 2000), at 34. An individual with a GAF score in this range *may* be "unable to keep a job." *Id.*

[15] Arend challenges only the factual findings pertaining to her mental impairments. ECF No. 10. The Court expresses no opinion as to whether the results of Dr. Jabbour's examination, when coupled with the other evidence in the record, provided adequate support for the ALJ's findings concerning Arend's physical abilities and limitations. In any event, Dr. Monaco testified that an individual could work as a bench assembler, machine feeder or document preparer at the "sedentary" level of exertion. R. at 57.

The documentary record indicates that Arend did not engage in substance abuse between August 2009 and February 2010. R. at 373. On February 4, 2010, Dr. Prather assigned Arend a GAF score of fifty-five. R. at 374. It was further noted that, during the previous year, Arend's highest GAF rating had been sixty. R. at 374. At the hearing, Arend testified that she had ingested cocaine in April 2010 and August 2010. R. at 43-44. She also stated that she had not consumed an alcoholic beverage subsequent to August 2010. R. at 44-45. As of January 10, 2011, however, Arend was residing with an "abusive partner" who was engaged in the selling of cocaine. R. at 375. The ALJ took notice of the improvement in Arend's condition between August 2009 and February 2010 in determining that her "disability" was attributable to ongoing substance abuse. R. at 25.

It is worth noting that no treating or examining medical source opined that Arend's impairments would cause her to be "off task" for twenty percent of a standard workday. The ALJ appears to have given Arend the benefit of the doubt by inferring that such a limitation had existed during the relevant periods of drug and alcohol consumption. R. at 16-19. When a claimant is actively using drugs or alcohol, any determination concerning the issue of materiality is necessarily hypothetical in nature. *Brueggemann v. Barnhart*, 348 F.3d 689, 695 (8th Cir. 2003). Dr. Detore stated that Arend's "marked anxiety, fears, and poor concentration" would most likely "decrease her chances of full recovery from her substance abuse." R. at 314. This observation suggests that Arend's inability to concentrate was partially attributable to her ongoing consumption of drugs and alcohol. Given that Arend's condition improved when she was abstinent and deteriorated when she was abusing substances, the ALJ had a sufficient evidentiary basis for concluding that Arend's inability to stay "on task" was attributable to her ongoing struggles with drug and alcohol abuse. R. at 21-25.

Dr. Detore reported that Arend had "decreased concentration" and an "inability to manage or persist at work-related activities." R. at 315. In *Ramirez v. Barnhart*, 372 F.3d 546, 554 (3d Cir. 2004), the United States Court of Appeals for the Third Circuit held that a limitation restricting a claimant to the performance of "simple one or two-step tasks" had not adequately accounted for her "deficiencies in pace." Seizing on Dr. Detore's report and the applicable language in *Ramirez*, Arend contends that the ALJ did not properly accommodate her "deficiencies in pace" by limiting her to the performance of "simple, routine, repetitive tasks." ECF No. 10 at 7, 14-15. In making this argument, Arend overlooks the portion of the ALJ's residual functional capacity assessment precluding the performance of work "in a fast-paced production environment." R. at 16, 21. This additional restriction accounted for Arend's pace-related deficiencies.

Arend correctly points out that, at the administrative level, the ALJ was required to decide all factual issues based on "the preponderance of the evidence." 20 C.F.R. §§ 404.953(a), 416.1453(a). She asserts that, in light of this standard, her entitlement to benefits has been established. ECF No. 10 at 15. At this stage, however, the Commissioner's findings need only be "supported by substantial evidence" in order to be regarded as "conclusive." 42 U.S.C. § 405(g). In the context of judicial review, the Commissioner's factual findings need not be established by a "preponderance of the evidence." *Ginsburg v. Richardson*, 436 F.2d 1146, 1148 (3d Cir. 1971). The applicable standard of review is highly deferential. *Jones*, 364 F.3d at 503. Arend's invitation to reweigh the relevant evidence must be declined. *Hartranft*, 181 F.3d at 360 (explaining that a reviewing court cannot set aside factual findings that are "supported by substantial evidence" even if it "would have decided the factual inquiry differently").

An individual is "disabled" under the Act only if the "reason" for his or her inability to work is a "physical or mental impairment." *Barnhart v. Walton*, 535 U.S. 212, 217, 122 S.Ct. 1265, 152 L.Ed.2d 330 (2002). At the hearing, Arend testified that she had lost jobs because of absences caused by domestic violence. R. at 35-36. The documentary record indicates that Arend has stayed at various shelters during the relevant period of time. R. at 446-447. She apparently described herself to Dr. Detore as a "codependent individual" who needed to avoid people who were actively using drugs or alcohol. R. at 312. The ALJ recognized a connection between Arend's "drug and alcohol abuse" and "her tendency to engage in abusive relationships." R. at 18. The record suggests that Arend's inability to maintain a job was caused, at least in part, by personal distractions and difficulties unrelated to medically determinable impairments.

## VII. CONCLUSION

For the foregoing reasons, Arend's motion for summary judgment (*ECF No. 9*) will be denied, the Commissioner's motion for summary judgment (*ECF No. 11*) will be granted, and the Commissioner's "final decision" in this case will be affirmed. The record indicates that Arend remained insured for Title II benefits through December 31, 2011, which postdated the ALJ's decision by more than six months. R. at 13, 135. If subsequent periods of sobriety have demonstrated Arend's inability to work in the absence of continued substance abuse, she remains free to file new applications for DIB and SSI benefits.

                                                  s/ David Stewart Cercone
                                                  David Stewart Cercone
                                                  United States District Judge

cc:    Lindsay Fulton Osterhout, Esquire
        Christy Wiegand, AUSA

        (*Via CM/ECF Electronic Mail*)